IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ADARYLL LAKEITH LEWIS, # 204432, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:14cv1243-MHT |
| | ) | (WO) |
| CHRISTOPHER GORDY, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter concerns a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 filed by Alabama inmate Adaryll Lakeith Lewis ("Lewis").  Doc. No. 1.[1]

## I.   BACKGROUND

On April 4, 2011, a Montgomery County jury found Lewis guilty of trafficking in cocaine, in violation of § 13A-12-231, Ala. Code 1975.  On May 20, 2011, the trial court sentenced Lewis as a habitual felony offender to life in prison without parole.

Lewis appealed, challenging the lawfulness of the investigatory traffic stop that led to his arrest and the seizure of the drug evidence.  Doc. No. 7-3.  On December 9, 2011, the Alabama Court of Criminal Appeals affirmed his conviction by memorandum opinion.  Doc. No. 7-6.  Based on procedural issues, the Alabama Court of Criminal Appeals allowed Lewis until April 18, 2012, to apply for rehearing.  *See* Doc. No. 7-7.  However, Lewis did not file his application for rehearing until May 2, 2012.  Doc. No. 7-9.  On May 11, 2012, the Alabama Court of Criminal Appeals overruled the application for rehearing, and on May 30, 2012, that court issued its certificate of

---

[1] Document numbers ("Doc. No.") are those assigned by the Clerk of Court in this civil action.  Page references are to those assigned by CM/ECF.

judgment.  Doc. Nos. 7-10 and 7-11.  Lewis filed no petition for writ of certiorari with the Alabama Supreme Court.

On October 24, 2012, proceeding *pro se*, Lewis filed a petition for post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure.  Doc. No. 7-14 at 9-27.   In that petition, Lewis claimed:

1. He was entitled to a new trial because –

   a. the State failed to establish an adequate chain of custody for the cocaine evidence and, thus, the cocaine evidence was improperly admitted at trial; and

   b. the State failed to disclose the identity of the confidential informant and of a person nicknamed "Bug," both of whom were material witnesses to the crime and necessary for his defense;

2. His trial counsel was ineffective for –

   a. not objecting to the admission of the cocaine evidence on the ground that the chain of custody was not established;

   b. not adequately arguing a motion to compel disclosure of the identities of the confidential informant and Bug;

   c. not raising in the motion for a new trial the fact that the trial court failed to rule on the motion to compel disclosure of the identities of the confidential informant and Bug;

   d. not objecting to hearsay; and

   e. not challenging the fact that the arrest report was not provided.

3. The trial court lacked jurisdiction to render the judgment or to impose the sentence because –

   a. the chain of custody of the cocaine evidence was not established;

   b. the trial court failed to conduct a hearing to determine what efforts the State made to determine the identities of the confidential informant and Bug;

    c.   the trial court failed to rule on his request to compel disclosure of the identities of the confidential informant and Bug;

    d.   the trial court failed to conduct a hearing on his motion for a new trial;

    e.   the trial court allowed him to be convicted based on hearsay testimony; and

    f.   the trial court allowed a police detective to testify regarding the results of forensic testing by the Alabama Department of Forensic Sciences ("DFS") without an expert from DFS testifying.

*Id*.

The State filed an answer and motion to dismiss Lewis's Rule 32 petition, arguing that his claims were precluded by Rules 32.2(a)(3) and (a)(5) because they could have been, but were not, raised and addressed at trial and on appeal. Doc. No. 7-14 at 47-49. On May 2, 2013, the trial court issued an order summarily denying Lewis's petition, finding that his claims were precluded by Rules 32.2(a)(3) and (a)(5). *Id*. at 71.

Lewis appealed, reasserting the claims from his petition. Doc. No. 7-15. On September 27, 2013, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming the trial court's judgment. Doc. No. 7-17. The Court of Criminal Appeals held that Claims 1 and 3 in Lewis's petition and each subclaim therein (as set out above) were nonjurisdictional constitutional claims that could have been, but were not, raised on direct appeal, and therefore the trial court was correct in finding these claims to be precluded under Rule 32.2(a)(5). *Id*. at 3-4. However, the Court of Criminal Appeals held that the trial court erred in finding that the allegations of ineffective assistance of trial counsel set out in Claim 2 in Lewis's petition were also precluded under Rule 32.2(a)(5), because Lewis's appellate counsel was his trial counsel and could not be expected to allege, on appeal, his own ineffectiveness. *Id*. at 4. The Court of Criminal Appeals determined that the trial court's error did not require reversal of its judgment because the

3

conclusory allegations in Lewis's petition were insufficient to demonstrate ineffective assistance of counsel under the standards in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id*. at 4-7.

Lewis applied for rehearing, which was overruled on November 1, 2013.  Doc. Nos. 7-18 through 7-20.  He then filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on December 20, 2013, the same date on which the court entered its certificate of judgment.  Doc. Nos. 7-21 through 7-24.

In September 2014, the trial court entered an order resentencing Lewis to life in prison with the possibility of parole (from the previous sentence of life without parole), based on a finding that Lewis had only two prior felony convictions that qualified for use under Alabama's habitual felony offender statute, rather than the three prior convictions invoked at his initial sentencing.  *See* Doc. No. 11-1.

Lewis initiated this federal habeas action on December 17, 2014,[2] by filing a § 2254 petition asserting these claims:

1. The State failed to disclose the identities of the confidential informant and "Bug," both of whom were material witnesses to the crime and necessary for his defense.

2. The State failed to establish an adequate chain of custody for the cocaine evidence admitted at trial.

3. His trial counsel was ineffective for –

   a. not adequately arguing the motion to compel disclosure of the identities of the confidential informant and Bug;

   b. not objecting to the admission of the drug evidence on chain-of-custody grounds; and

   c. not objecting to hearsay testimony by the police detective.

---

[2] The Respondents acknowledge that Lewis's instant petition is timely filed under the one-year limitation period of 28 U.S.C. § 2244(d).  *See* Doc. No. 11.

Doc. No. 1 at 5-12.

The respondents answer that Lewis's claims were properly adjudicated on the merits by the state courts or else are procedurally defaulted. Doc. No. 7 at 6-11; Doc. No. 11. After careful review of the § 2254 petition, the parties' submissions, and the record in this case, the undersigned finds that Lewis's petition should be denied without an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.   DISCUSSION

### A.   Scope of Habeas Review for Claims Adjudicated on Merits by State Courts

"When it enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress significantly limited the circumstances under which a habeas petitioner may obtain relief." *Hardy v. Allen*, 2010 WL 9447204, at *7 (N.D. Ala. Sep. 21, 2010). To prevail on a § 2254 claim adjudicated on the merits by the state courts, a petitioner must show that a decision by the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) and (2); *see Williams v. Taylor*, 529 U.S. 362, 404-05 & 412-13 (2000).

A state court's decision is "contrary to" federal law either if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Williams*, 529 U.S. at 404-06; *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision is an "unreasonable application" of federal law if it either correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or it extends or fails

to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 407. "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Williams*, 529 U.S. at 411; *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011) (internal citations omitted).

Federal courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 1. *Strickland Standard for Claims of Ineffective Assistance of Counsel*

The Alabama Court of Criminal Appeals applied the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), in determining that Lewis was entitled to no relief on the claims of ineffective assistance of counsel he raised in his Rule 32 petition. *See* Doc. No. 7-17 at 4-7. *Strickland* sets forth the clearly established federal law on this issue*, see Pinholster,* 536 U.S. at 189, and requires that a petitioner alleging ineffective assistance

of counsel establish that his counsel's performance was deficient and that he was actually prejudiced by the inadequate performance. *Strickland*, 466 U.S. at 687. Under *Strickland*, a petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," *id*. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

An ineffective assistance of counsel claim is examined under the "totality of the circumstances." *House v. Balkcom*, 725 F.2d 608, 615 (11th Cir.1984). An attorney's performance is presumed to have been reasonable and must not be examined with the aid of judicial hindsight. *Messer v. Kemp*, 760 F.2d 1080, 1088 (11th Cir. 1985). A federal court must apply a "heavy measure of deference to counsel's judgments." *Singleton v. Thigpen*, 847 F.2d 668, 670 (11th Cir. 1988) (quoting *Strickland*, 446 U.S. at 691).

### 2.   *Lewis's Claims of Ineffective Assistance of Counsel*

#### a.   Identities of Confidential Informant and "Bug"

Lewis claims that his trial counsel was ineffective for failing to adequately argue a motion to compel disclosure of the identities of the confidential informant and an individual nicknamed "Bug." Doc. No. 1 at 5-6. As with all claims of ineffective assistance of counsel asserted by Lewis in his Rule 32 petition, the Alabama Court of Criminal Appeals held that the conclusory allegations in Lewis's petition were insufficient to demonstrate ineffective assistance under the standards in *Strickland v. Washington*, 466 U.S. 668 (1984). *See* Doc. No. 7-17 at 4-7.

The facts stated in the Alabama Court of Criminal Appeals' opinion on direct appeal cast light on Lewis's claim regarding the confidential informant and Bug:

> On December 1, 2009, Detective [B.C.] Schlemmer [with the City of Montgomery Police Department] was contacted by a confidential informant. The informant told Schlemmer that he could purchase crack cocaine from Lewis through a middle man known as "Bug." Schlemmer met with the informant and

Bug.  On speakerphone in Schlemmer's presence, Bug phoned Lewis and set up a drug transaction to occur about one hour later at the flea market on the corner of Woodley Road and East South Boulevard.

After the transaction was arranged, Schlemmer explained to the informant and Bug that after the transaction was completed, marked SWAT units would move in and take Lewis into custody.  Bug was not comfortable with that arrangement and refused to participate further.  However, neither Bug nor anyone else called Lewis to cancel the transaction.

Schlemmer and the informant went to the flea market in an unmarked vehicle to see if Lewis would show up.  Lewis arrived in a white Cadillac Escalade, as described by the informant, and the informant identified Lewis.  Schlemmer radioed the SWAT team, advising them that Lewis had arrived and ordering an investigatory stop of Lewis's vehicle.

Before the SWAT team arrived, a green Ford Explorer parked beside Lewis's vehicle.  The driver, Michael Jerido, got out of the Explorer and entered Lewis's Escalade.  Schlemmer observed what he believed, based on his training and experience, to be a drug buy.  After the transaction was completed, Jerido reentered his own vehicle.  As Jerido was getting into his Explorer, the marked SWAT units entered the parking lot.

When the marked units entered the parking lot, Lewis and Jerido "immediately threw their vehicles into drive and both exited the parking lot at an extremely high rate of speed in opposite directions." (R. 11.)  Schlemmer chased Jerido's Explorer, while a marked SWAT vehicle chased Lewis's Escalade.  Lewis exited the parking lot onto Woodley Road, driving at "speeds [that] exceeded anywhere from 60 to 80 miles an hour." (R. 20.)  The SWAT vehicle followed with its lights and siren on. Lewis drove about five miles and turned onto Wilmington road, followed by the SWAT vehicle.  Lewis then bailed out of his Escalade, which kept rolling while Lewis ran.

Two of the SWAT team members pursued Lewis on foot.  As Lewis ran, he dropped several packets of cocaine behind him.  The officers caught up with Lewis behind a nearby house. There was a "short scuffle," (R. 21.) and Lewis had to be tased before he could be subdued.  Lewis was holding cocaine at the time, and more cocaine was recovered from his person when he was arrested.

Doc. No. 7-6 at 1-3.

The Supreme Court has recognized that although the government generally has the privilege to withhold the identity of its confidential sources, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense

of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States*, 353 U.S. 53, 60. This requires balancing "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62. The courts have focused the inquiry by relying principally upon three considerations: (1) the extent of the informant's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant; and (3) the government's interest in nondisclosure.[3] *See United States v. Tenorio-Angel*, 756 F.2d 1505, 1509 (11th Cir. 1985).

Here, the informant set up a meeting with Detective Schlemmer and Bug because Bug could arrange a drug purchase from Lewis. *See* Doc. No. 7-1 at 57-58. Schlemmer, Bug, and the informant met, and Bug placed a call to Lewis in the presence of Schlemmer and the informant. Schlemmer heard both ends of the phone conversation because the call was on speakerphone. *Id.* at 58. Bug had no further participation in any transaction. The informant and Schlemmer went to the planned location of the drug purchase, a parking lot, where the informant identified Lewis. *Id.* at 60. However, before the transaction between Lewis and the informant could take place, another person, identified as Michael Jerido, entered Lewis's car. *Id.* at 61-62. According to Schlemmer, based on his training and experience, he observed what appeared to be a drug sale between Jerido and Lewis. *Id.* at 62. Based on that observation, Schlemmer initiated an investigatory traffic stop, which, through the assistance of a SWAT unit, was eventually accomplished, with separate vehicles driven by Lewis and Jerido being stopped. *Id.* at 63-64. Quantities of cocaine were recovered from Lewis when he was apprehended after fleeing on foot. *Id.* at 74-75.

---

[3] "In Alabama, the question of disclosure or nondisclosure of a confidential police informant's identity for the purposes of challenging probable cause is a matter of discretion for the trial court." *Ex parte Pugh*, 493 So. 2d 393, 397 (Ala. 1986). Rule 509 of the Alabama Rules of Evidence makes the identity of an informant privileged unless the informant was a substantial participant in the crime. Ala. R. Evid. 509(c)(2).

Under these facts, the State had no obligation to disclose the identities of the confidential informant and Bug. Detective Schlemmer heard both ends of the phone conversation in which Bug arranged a drug buy from Lewis; thus, neither the informant's nor Bug's testimony was necessary to establish that the drug buy had been set up. Moreover, the informant and Bug had no real involvement in the drug sale for which Lewis was charged and convicted. While the informant identified Lewis in the parking lot, Schlemmer observed the independent drug sale. Because neither the informant nor Bug was a substantial participant in the crime for which Lewis was convicted, the State was under no obligation to reveal their identities. *See Tenorio-Angel*, 756 F.2d at 1509. Further, regarding the arranged drug buy aborted when the independent drug sale intruded on events, Bug and/or the informant were with Schlemmer during all significant occurrences, about which Schlemmer could testify. *See United States v. Gutierrez*, 931 F.2d 1482, 1491 (11th Cir. 1991). Finally, Lewis demonstrates no relationship between any asserted defense in his case and possible testimony from the informant or Bug. *Id.*; *see United States v. Kerris*, 748 F.2d 610, 614 (11th Cir. 1984) ("Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure."). Consequently, there was no attorney error in the failure of Lewis's trial counsel to pursue a motion to compel disclosure of the identities of the confidential informant and Bug. Counsel is not ineffective for failing to argue a meritless issue. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

The Alabama Court of Criminal Appeals correctly identified *Strickland* as the controlling law and properly applied it to Lewis's ineffective-assistance-of-counsel claim. The state court decision was neither contrary to, nor an unreasonable application of, clearly established federal law, and it did not involve an unreasonable determination of the facts in light of the evidence

presented.[4]  28 U.S.C. § 2254(d)(1) and (2).  Consequently, Lewis is not entitled to habeas relief based on this claim.

> b.  <u>Chain of Custody</u>

Lewis contends that his trial counsel rendered ineffective assistance by failing to object to admission of the cocaine evidence on grounds that the chain of custody was fatally defective.  Doc. No. 1 at 8-9.  Denying relief on this claim, the Alabama Court of Criminal Appeals held that Lewis failed to demonstrate deficient performance and resulting prejudice under the *Strickland* test for claims of ineffective assistance of counsel.  *See* Doc. No. 7-17 at 4-7.

In *Ex parte Holton*, 590 So. 2d 918 (Ala. 1991), the Alabama Supreme Court discussed the requirements for establishing the chain of custody:

> The chain of custody is composed of "links."  A "link" is anyone who handled the item.  The State must identify each link from the time the item was seized.  In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: "(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition."  Imwinklereid, *The Identification of Original, Real Evidence*, 61 Mil.L.Rev. 145, 159 (1973).

> If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a "missing" link, and the item is inadmissible.  If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the 'link,' as to one or more criteria or as to one or more links, the result is a "weak" link.  When the link is "weak," a question of credibility and weight is presented, not one of admissibility.

590 So. 2d at 920.

---

[4] Here, because the state appellate court ruled on the merits of Lewis's ineffective assistance of counsel claims, this court's § 2254 review under *Strickland* is another step removed from the original analysis, or as the Supreme Court puts it, "doubly deferential."  *Burt v. Titlow*, ___ U.S. ___, ___, 134 S.Ct. 10, 13 (2013) (quotation marks and citation omitted); *see Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 652 (11th Cir. 2014) (quoting *Burt*).

After the decision of the Alabama Supreme Court in *Ex parte Holton*, however, the Alabama Legislature adopted § 12-21-13, Ala. Code 1975, effective August 7, 1995.  That statute provides:

> Physical evidence connected with or collected in the investigation of a crime shall not be excluded from consideration by a jury or court due to a failure to prove the chain of custody of the evidence.  Whenever a witness in a criminal trial identifies a physical piece of evidence connected with or collected in the investigation of a crime, the evidence shall be submitted to the jury or court for whatever weight the jury or court may deem proper.  The trial court in its charge to the jury shall explain any break in the chain of custody concerning the physical evidence.

§ 12-21-13, Ala. Code 1975.

Subsequent to the adoption of § 12-21-13, Ala. Code 1975, the Alabama Supreme Court in *Hale v. State*, 848 So.2d 224 (Ala. 2002), discussed the application of § 12-21-13:

> This statute, by its terms, applies only to "[p]hysical evidence connected with or collected in the investigation of" the charged crime.  To invoke the statute the proponent of the evidence must first establish that the proffered physical evidence is in fact the very evidence "connected with or collected in the investigation."  Moreover,
>
>> "[i]n *Land v. State*, 678 So.2d 201 (Ala.Cr.App. 1995), aff'd, 678 So.2d 224 (Ala.1996), a case which appears to rely on § 12–21–13, this court ruled that where a witness can specifically identify the evidence, and its condition is not an issue in the case, then the State is not required to establish a complete chain of custody in order for the evidence to be admitted into evidence.  We stated: "The eyeglasses were admissible without establishing a chain of custody because [the testifying officer] was able to specifically identify them, and their condition was not an issue in the case."  *Land*, 678 So.2d at 210...."

848 So. 2d at 228-29.

In *Ex parte Mills*, 62 So. 3d 574 (Ala. 2010), the Alabama Supreme Court considered a chain-of-custody challenge on appeal to determine whether the admission of certain items into evidence at trial, without objection, constituted plain error.  The court stated:

Mills did not challenge the chain of custody as to any of the now-challenged items at trial.  Unlike *Birge [v. State*, 973 So.2d 1085 (Ala.Crim.App. 2007) ], in which evidence indicated that several different unidentified individuals could have handled the specimens and there were discrepancies in the records about the specimens, nothing in the present case indicates that the items were tampered with or altered in any manner from the time [law enforcement] relinquished custody of them to DFS [the Department of Forensic Sciences] until the time Bass tested them at DFS.  Mills also has made no "showing of ill will, bad faith, evil motivation, or some evidence of tampering" while the items were at DFS.  *Lee [v. State*], 898 So.2d [790] at 847 [(Ala.Crim.App. 2001)].  Thus, this link, at worst, is a "weak" link rather than a "missing' link in the chain of custody."

62 So. 3d at 598.  "[E]vidence that an item has been sealed is adequate circumstantial evidence to establish the handling and safeguarding of the item." *Lane v. State*, 644 So. 2d 1318, 1321 (Ala. Crim. App. 1994).

The Alabama Court of Criminal Appeals has also stated the following concerning evidence that is "routinely handled by governmental officials":

"'Tangible evidence of a crime is admissible when shown to be "in substantially the same condition as when the crime was committed."  And it is to be presumed that the integrity of evidence routinely handled by governmental officials was suitably preserved "[unless the accused makes] a minimal showing of ill will, bad faith, evil motivation, or some evidence of tampering."  If, however, that condition is met, the Government must establish that acceptable precautions were taken to maintain the evidence in its original state.

"'The undertaking on that score need not rule out every conceivable chance that somehow the [identity] or character of the evidence underwent change.  "'[T]he possibility of misidentification and adulteration must be eliminated,' we have said, 'not absolutely, but as a matter of reasonable probability."  So long as the court is persuaded that as a matter of normal likelihood the evidence has been adequately safeguarded, the jury should be permitted to consider and assess it in the light of surrounding circumstances.'"

*Moorman v. State*, 574 So.2d 953, 956-57 (Ala. Crim. App. 1990) (quoting *United States v. Roberts*, 844 F.2d 537, 549-50 (8th Cir. 1988), quoting in turn *United States v. Anderson*, 654 F.2d 1264, 1267 (8th Cir. 1981), quoting in turn *United States v. Lane*, 591 F.2d 961 (D.C. Cir.1979)).

Although the ideal practice would be for one person to maintain exclusive and constant control of the [evidence], these rules are made for practical people who

> deal with such evidence as part of day to day routine.  The chain of custody requirements aim at a "reasonable probability" that there has been no tampering; they are not intended as an obstacle course or a walk through a legalistic mine field.

*Blanco v. State*, 485 So. 2d 1217, 1220 (Ala. Crim. App. 1986).  "The totality of the circumstances test is applied to alleged deficiencies in a chain of custody."  *Whitt v. State*, 733 So. 2d 463, 473 (Ala. Crim. App. 1998).

Here, Detective Schlemmer testified that he received the drug evidence recovered at Lewis's arrest scene and conducted a field test that indicated positive for cocaine.  Doc. No. 7-1 at 130-31.  Although Schlemmer did not specify the officer who turned the evidence over to him at the scene, he testified that the officers who pursued Lewis recovered the drugs from Lewis's person and from the ground where Lewis had dropped some of the drugs during the pursuit.  *Id*. at 129-30.  Schlemmer identified State's Exhibit 2, several plastic baggies containing cocaine base, as the evidence recovered at the arrest scene and turned over to him.  *Id*. at 130.   Schlemmer testified that after he field tested the drugs, he secured the evidence and took it to the Department of Forensic Sciences laboratory, where he turned it over for analysis.  *Id*. at 131-32.  The results proved that the substance was crack cocaine (over 85 grams), and the State introduced a certificate of analysis at trial establishing that fact.  *Id*. at 132-34; *see id.* at 50-51.

While there was not an abundance of direct testimony regarding the chain of custody, the State presented sufficient circumstantial evidence of the custodial links of the drug evidence from seizure to analysis.   The testimony was sufficient to demonstrate that the evidence was in substantially the same condition when it was tested as when it was obtained, and that the evidence tested was the evidence recovered at the scene.  *See McCray v. State*, 548 So. 2d 573, 576 (Ala. Crim. App. 1988).  Lewis fails to point to anything that even suggests tampering or casts doubt on the authenticity of the tested evidence.  When Detective Schlemmer relinquished the evidence to

14

the laboratory, the State did not have to prove a further chain of custody.  *See Hale*, 848 So. 2d at 231.  A complete chain of custody was established.  Any weak link in that chain presented a jury question of credibility and weight, not one of admissibility.  *See Ex parte Holton*, 590 So. 2d at 920.

An objection by Lewis's trial counsel that the State did not prove the chain of custody would have been futile under the facts of this case.  Therefore, Lewis shows neither deficient performance by counsel nor any resulting prejudice.  The state-court decision finding that counsel was not ineffective under the *Strickland* standard was neither contrary to, nor an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), and it did not involve an unreasonable determination of the facts in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2).  Lewis is not entitled to habeas relief on this claim.

c.   Hearsay Testimony

Lewis contends that his trial counsel was ineffective for failing to object to hearsay testimony by Detective Schlemmer.  Doc. No. 1 at 5-6.  According to Lewis, Schlemmer testified regarding out-of-court statements by the confidential informant and Bug, rendering his trial fundamentally unfair.  *Id.*  On this claim, the Alabama Court of Criminal Appeals held that Lewis's cursory allegations in his Rule 32 petition failed to demonstrate deficient performance and resulting prejudice under the *Strickland* standard.  *See* Doc. No. 7-17 at 4-7.

Lewis does not specify the hearsay testimony about which he complains.  Consequently, this court cannot say it was error for the state appellate court to hold that he failed to satisfy the *Strickland* standard regarding the claim.  Moreover, the record reflects that Schlemmer testified regarding his firsthand knowledge of the phone conversation setting up the drug buy, because he listened to that conversation on speakerphone.  Schlemmer also observed firsthand the drug deal

15

that led to Lewis's arrest and conviction. There does not appear to be any improperly admitted hearsay testimony that rendered Lewis's trial fundamentally unfair. The state court decision here was neither contrary to, nor an unreasonable application of, clearly established federal law, and it did not involve an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) and (2). Consequently, Lewis is not entitled to habeas relief based on this claim.

**B.   Other Claims**

In his § 2254 petition, Lewis also presents substantive claims that (1) the State improperly failed to disclose the identities of the confidential informant and Bug, and (2) the State failed to establish an adequate chain of custody for the cocaine evidence. Doc. No. 1 at 5-9. The Respondents argue that these claims were unexhausted in the state courts and are procedurally defaulted for purposes of federal habeas review. It is unnecessary, however, to undertake an analysis of the Respondents' procedural default defense here, because, in discussing Lewis's claims of ineffective assistance of counsel above, this court assessed the merits of the underlying substantive claims and found that the underlying claims lacked merit. Because this court finds no merit in Lewis's claims regarding the State's failure to disclose the identities of the informant and Bug and the alleged chain-of-custody defect, it pretermits discussion of the issue of procedural default. Because these claims, when considered as substantive claims, lack merit, they provide Lewis no basis for habeas relief.

.**III.   CONCLUSION**

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and this case be DISMISSED with prejudice.

The Clerk of the Court is DIRECTED to file the Recommendation of the Magistrate Judge and to serve a copy on the petitioner.  The petitioner is DIRECTED to file any objections to this Recommendation on or before February 16, 2017.  Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the petitioner objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 2nd day of February, 2017.


   /s/  Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE